IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br>Angie Wynn Strickland,<br><br>      Debtor. | } } } } } | Case No. 19-41331-JJR13 |
| Dorothy Bone, Conservator of the Estate<br>Of Ruth Maxine Wynn Epperson, an<br>Incapacitated Person,<br><br>      Plaintiff,<br>v.<br><br>Angie Wynn Strickland,<br><br>      Defendant. | } } } } } } } } } } } | AP No. 19-40047-JJR |

OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Over the past 32 years, the debtor-defendant, Angie Wynn Strickland ("Strickland") has filed 21 bankruptcy cases: 17 Chapter 13 cases, including this one, and four Chapter 7 cases. A review of the schedules filed in her previous cases disclosed the usual array of creditors found in consumer cases filed in this district—title-pawn lenders, rent-to-own and consumer finance companies, and credit card issuers. But this case is different. One of Strickland's creditors is the court-appointed conservator charged with managing the affairs of Strickland's mother, Ruth Maxine Wynn Epperson ("Epperson"). Strickland's mother suffers from dementia and is a resident in a nursing home, having been cared for by a guardian before the appointment of her conservator. Although Strickland is her mother's "sole heir," she just could not wait to get her hands on her mother's property.

The complaint in this adversary proceeding (AP Doc. 1) sought to have the damages

awarded in a Final Order (AP Doc. 62, Ex. A and herein, the "Order") entered by the Circuit Court of Talladega County, Alabama (the "State Court") against Strickland in favor of the plaintiff, Dorothy Bone, Conservator of the Estate of Ruth Maxine Wynn Epperson, an Incapacitated Person (the "Conservator"), declared nondischargeable under Bankruptcy Code § 523(a)(2)(A) or (a)(4) as fraud "and/or under the color of a fraudulent Power of Attorney and/or Revocation of Power of Attorney;" or as larceny. The parties filed cross motions for summary judgment (the Conservator's motion is AP Doc. 62 and Strickland's is AP Doc. 63) as well as responses (the Conservator's response is AP Doc. 64 and Strickland's is AP Doc. 65).

The Conservator's complaint referred generally to fraudulent acts under § 523(a)(2)(A) but did not specify which of the fraudulent acts in that subsection she was referring to. However, her motion was more specific and argued that "false pretenses" are preclusively established by the findings in the Order. Strickland argued that even if the facts were preclusively established, judgment in her favor was proper as a matter of law because the facts failed to establish each element required for nondischargeability. She also attempted to include evidence offered in the State Court proceeding before the Order was entered to raise issues of fact not supported by the findings recited in the Order. (AP Doc. 65.)

This court considered the parties' motions and their responses, the matters of record in the bankruptcy case, as well as the relevant statutory and case law, and concludes that the Conservator's motion for summary judgment is due to be granted and Strickland's motion is due to be denied. While Fed. R. Bankr. P. 7052 expressly provides that the court is not required to state separate findings and conclusions in ruling on a motion under Fed. R. Bankr. P. 7056, the court

2

Case 19-41331-JJR13    Doc 71    Filed 01/14/21    Entered 01/14/21 16:02:09    Desc Main
Document    Page 2 of 12

sets forth its findings and conclusions herein to the extent necessary to determine the motions.[1]

Facts:

Strickland is Epperson's daughter, and she had access to a house located in Talladega County, Alabama, owned by her mother. During a bench trial before the State Court on June 24, 2019, each side was represented by counsel and according to the Order, stipulated to the following facts:

1. The property at issue is located at 117 Legion Avenue, Sylacauga, Alabama and has an ad valorem tax assessed value of $113,800.00. Strickland is Epperson's "sole heir" and daughter.

2. The Conservator was initially appointed Epperson's guardian in 2017, following the resignation of the individual who had been serving as Epperson's guardian since December 2015. She was subsequently appointed Epperson's conservator on September 8, 2018.

3. Epperson was admitted to a local nursing home on May 9, 2018 upon recommendation of the Alabama Department of Human Resources, due to her dementia with behavioral disturbance and adjusted disorder with depressed mood.

4. After being appointed, the Conservator performed an inventory of Epperson's assets and discovered that a quitclaim deed for the subject property, purporting to transfer the property from Epperson to Strickland, had been recorded in the Probate Office of Talladega County immediately before Epperson's admission to the nursing home.

Following the parties' presentation of evidence, the State Court made further findings in its Order in addition to the stipulated facts:

1. The deed at issue purported on its face to have been prepared and executed by Epperson in April 2006. The deed was altered by Strickland or someone acting at her direction before being recorded on April 30, 2018 (approximately one week before Epperson was admitted to the nursing home). Three different versions of the second page of the deed, containing Epperson's purported signature, were offered into evidence and the version of the signature page that had been recorded was not an original but instead was an uncertified copy.

---

[1]This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(I), and both parties have appeared and consented to this court's jurisdiction. (AP Doc. 20.) Therefore, the court has authority to enter a final order.

2. Epperson's signature was not notarized until April 30, 2018, at which time it was improperly notarized by a notary before whom she did not personally appear (the Conservator's motion indicates the notarization was done via Facetime phone call), at Strickland's instigation, while Epperson was suffering from dementia and related issues, and after a guardian had been appointed for Epperson at least three years earlier.

3. Strickland testified that she took the original deed from a lock box that belonged to Epperson, and that Epperson had never delivered the deed to Strickland.

4. Despite the deed never having been delivered, and despite a guardian having been appointed for Epperson since at least 2015, and despite a lack of permission to do so, Strickland took the deed and other documents from her mother's lock box while her mother was suffering from dementia and other issues.

5. The fair rental value of the property ranged from $500 to $550 per month.

6. Strickland had been banned from access to Epperson's accounts and was banned from entering Coosa Pines Federal Credit Union.

7. The State Court found that both Strickland's testimony, as well as the testimony of her witness, were not credible regarding the notarization of the deed. The State Court also found the deed's authenticity to be highly questionable because the court did not believe Strickland or her witness.

8. The State Court found that despite the face of the deed saying it was prepared in 2006 by a Talladega law firm, the deed was not actually prepared at that time by that firm.

9. The State Court found that the second page of the deed had been altered as to its date of execution across the three different versions of the signature page and notarization page.

10. Additional evidence supported the State Court's finding that Strickland had a history of falsifying and forging numerous documents including a power of attorney for financial management, as well as a quitclaim deed (different from the deed at issue in this proceeding) from Epperson to Strickland and her husband that led to Strickland's indictment for theft of property and possession of a forged instrument. Strickland pled guilty to a lesser charge.

11. And the State Court found that Strickland had also forged a rescission of a revocation of a power of attorney five days after Epperson was admitted to the nursing home.

Against this backdrop of facts and findings, and because of Strickland's wrongful and fraudulent actions, the State Court determined by a preponderance of the evidence that the

4

quitclaim deed from Epperson to Strickland should be "delivered up and canceled and declared and adjudged void." Title was quieted in Epperson, who was also entitled to immediate possession. The State Court explicitly ruled that Strickland held "no estate or interest whatsoever in or to the property" and required that she immediately vacate the property. Additionally, the State Court awarded damages for the wrongful use of the property of $7,500 ($500 per month from April 30, 2018 through July 30, 2019) and costs of $322.45. The State Court Order was entered on August 5, 2019, and Strickland's current chapter 13 case was filed on August 9, 2019, with no appeal of the Order. Despite the Order, Strickland remained in possession of her mother's property until sometime after she filed this, her twenty-first bankruptcy case.[2] (*See* Doc. 47, Order Granting Motion for Relief from Stay.)

The Conservator's motion relies upon the State Court's findings and ruling to establish that the damages awarded were the result of Strickland's false pretenses, as well as larceny, under principles of collateral estoppel. Strickland's motion counters that even under the State Court's findings, the only misrepresentation she made was to the deed recording clerk and not to the Conservator or the estate (so that an essential element of the false pretenses claim must fail), and that larceny cannot lie for the improper taking of real property (as opposed to personalty).

---

[2] Because of Strickland's egregious number of prior bankruptcy cases—20—the confirmation order in the underlying chapter 13 case provides that if the case is dismissed without a discharge, she will be barred from filing a case under any chapter of title 11 for a period of three years from dismissal of the underlying case. (BK Doc. 53.) Strickland's bankruptcy history includes sixteen chapter 13 cases, all of which were dismissed without a discharge due to her failure to complete plan payments.

5

Summary judgment standard:

A motion for summary judgment on the merits of the complaint is controlled by Fed. R. Bankr. P. 7056, which provides that Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings. The court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the merits of a motion for summary judgment, the court's role is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes, if any, raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ.*, 495 F.3d 1306 (11th Cir. 2007).

> This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried, and if not, whether the movant is entitled to a judgment as a matter of law. It is the substantive law that identifies those facts which are material on motions for summary judgment.
>
> When the court considers a motion for summary judgment it must refrain from deciding any material factual issues. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."

*Brown v. Mendel*, 864 F. Supp. 1138, 1142–43 (M.D. Ala. 1994), *aff'd sub nom. Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996) (internal citations omitted). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

Issue preclusion:

When this court is required to determine the preclusive effect of a state court judgment, Alabama's preclusion rules apply. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013). Alabama law supports issue preclusion (collateral estoppel) when three elements are met: "(1) [t]he issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment." *Martin v. Reed,* 480 So. 2d 1180, 1182 (Ala. 1985). The cause of action does not have to be identical, but the issue for which preclusion is sought must be identical, and a state court finding as to the underlying elements in the § 523 action preclude relitigation of those elements. *In re Bilzerian*, 100 F.3d 886, 888 (11th Cir. 1996). The Conservator contends that "[a]n Alabama Circuit Court has already determined that Defendant Strickland obtained the use of [the estate's] property by false pretenses and that she profited thereby" based on the findings in the Order although the State Court did not use the term "false pretenses," and that the facts, as stated in the Order, also established larceny of the deed wrongfully taken by Strickland from her mother's lockbox. This court agrees.

7

The State Court's findings and conclusion are entitled to preclusive effect in this adversary proceeding. The issues adjudicated by the State Court—whether Strickland wrongfully took the deed from the lockbox without permission and with fraudulent intent; whether she or someone at her direction caused it to be altered it; whether she arranged to have the deed improperly notarized and then recorded and thereby misrepresented her ownership and right of possession—were identical to the issues presented to this court to determine the dischargeability of the damages awarded by the State Court in the Order. Those issues were actually litigated in the State Court, where Strickland was represented by counsel, and their resolution was necessary to support the Order. Accordingly, the findings of fact in the Order are established for the purpose of the further adjudication of the issues presented in this adversary proceeding. This court must now determine whether those facts amount to false pretenses or larceny for purposes of Code § 523.

Larceny under Code § 523(a)(4):

The Conservator's motion argued that the State Court Order contained preclusive findings that establish Strickland's actions of taking the undelivered deed from Epperson's lockbox while Epperson was suffering from dementia, having that deed improperly notarized, altered, and recorded, all without Epperson's ability to consent due to her dementia, satisfied the elements of larceny under Code § 523(a)(4) and therefore the judgment for the damages that flowed from the deed's theft should be nondischargeable. Strickland argued that under the findings in the Order, Strickland took no personal property with the intent to deprive Epperson of it permanently, and that no real property was "taken" because a forged deed is not effective to transfer real property. This argument overlooks that the deed itself was Epperson's personal property when it was wrongfully taken and permanently altered as part of Strickland's fraudulent attempt to assert

8

ownership and to deprive Epperson of the deed before its delivery and without a proper acknowledgement before a notary public, which is a requirement for the deed to be effective to transfer title.³

Larceny for purposes of § 523(a)(4) is defined under federal common law as requiring a plaintiff to show "a felonious taking of property with the intent to convert it or to permanently deprive the owner of it." *Bennett v. Wright (In re Wright)*, 282 B.R. 510, 516 (Bankr. M.D. Ga. 2002). Put another way, larceny is defined as "the fraudulent taking and carrying away [of] property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Dennis*, 444 B.R. 210, 217 (Bankr. N.D. Ala. 2011). Larceny requires proof of fraudulent intent or deceit. *In re Cunningham*, 482 B.R. 444, 447 (Bankr. N.D. Ala. 2012); *Hosey v. Hosey (In re Hosey)*, 355 B.R. 311, 323-24 (Bankr. N.D. Ala. 2006). Common-law larceny requires the taking of personal property and that the initial appropriation be wrongful (i.e., felonious). *In re Moschell*, 607 B.R. 487, 499 (Bankr. W.D. Pa. 2019). While the federal common law definition of larceny applies to actions under Code § 523(a)(4), Alabama law determines the parties' rights in the underlying personal property. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). In Alabama, a deed or other document of conveyance is itself statutorily recognized as an item of personal property.⁴

---

³ In Alabama, a deed must be attested by one or two witnesses (depending upon the circumstances of the deed's execution) to be effective to convey title. ALA. CODE § 35-4-20 (1975). Additionally, the requirement for witness attestation may be satisfied by the proper acknowledgement by the grantor before a notary public. ALA. CODE § 35-4-23 (1975).

⁴ Personal property in Alabama includes "money, goods, chattels, things in action and evidence of debt, deeds and conveyances." ALA. CODE § 1-1-1(8) (1975).

Based on the foregoing, this court finds that the Conservator is entitled to judgment because the findings in the State Court Order preclusively establish each element of larceny. The deed—unnotarized and undelivered—was Epperson's personal property. Strickland took the deed wrongfully, without Epperson's permission, and even more egregiously, while Epperson was incapable of giving consent due to her dementia and earlier appointment of a guardian. Strickland wrongfully took the deed, along with other papers, from Epperson's lock box with the intent to deprive Epperson of the undelivered and unnotarized deed permanently and with the intent to deceive, resulting in the damages. Of particular import in respect to the wrongful and fraudulent appropriation of the deed, the State Court found that Strickland's evidence and testimony were not credible, given her conflicting explanations of the events surrounding the deed's execution, alterations, and improper notarization. The State Court also found that Strickland lacked credibility and had a history of fraudulent attempts to finagle deeds and powers of attorney, and had behaved so badly as to have been banned from accessing her mother's accounts or even entering the credit union.

These findings establish fraudulent intent in taking the deed from the lock box (and a pattern of fraudulent behavior) as well as deceit. These findings also establish that Strickland intended to, and did, convert the deed to her own purposes while permanently depriving Epperson of the undelivered and unnotarized deed as it existed prior to Strickland's alterations. By virtue of Strickland's wrongful and fraudulent taking of the deed from the lockbox, without which none of the fraudulent steps that followed would have been possible, Epperson (and consequently her estate) was permanently deprived of her property—the unnotarized, undelivered, unaltered deed. Accordingly, the debt represented by the State Court Order is nondischargeable as a product of larceny under Code § 523(a)(4). Because the entire judgment debt in the State Court Order is

nondischargeable as a product of larceny, the court need not reach the issue of whether the debt is also nondischargeable as the result of false pretenses under Code § 523(a)(2)(A).

Postpetition Claim:

The Conservator filed a separate claim for physical damages suffered by the subject property allegedly caused by Strickland after she filed her bankruptcy petition and for the rental value of the property accruing postpetition as a result of Strickland's refusal to timely vacate the property. (Claim 8 filed Oct. 14, 2019.) Code § 1305(a) allows a postpetition claim under limited circumstances: "(1) for taxes that become payable to a governmental unit while the case is pending; or (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan." Claim 8 was not at issue in the summary judgment motions but is being addressed by the court sua sponte.

Claim 8 does not satisfy the requirements for allowance of a postpetition claim under Code § 1305 and therefore is due to be disallowed. The claim was not for taxes, and because the State Court's Order required Strickland to vacate the subject property before her bankruptcy case was filed, the property was not necessary for her performance under her subsequently proposed and now confirmed plan. Thus, Claim 8 will be disallowed under § 1305 and should not be included in the trustee's distributions to creditors. The postpetition debt represented by Claim 8 will not be discharged under Code § 1328 inasmuch as it is not allowed under Code § 1305 and is not provided for by the plan.[5]

---

[5] Strickland's confirmed plan (Bk Doc. 35) provides that property of the estate will not vest until entry of the discharge, so the automatic stay is currently in place to prevent collection from either Strickland or the estate, at least in the absence of stay relief. The court does not reach the issue of whether the postpetition debt represented by Claim 8 would be nondischargeable under Code § 523 in the current or any subsequent case.

The court will enter an order conforming to this opinion.

So done this 14th day of January 2021.

/s/ James J. Robinson  
JAMES J. ROBINSON  
CHIEF U.S. BANKRUPTCY JUDGE

12